FILED

MAR 10 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1 : 26 CR 00123 |
| | ) | Title 18, United States Code, |
| BARRY ANDERSON, | ) | Sections 1341, 1349, and 2 |
| | ) | |
| Defendant. | ) | **JUDGE RUIZ** |

GENERAL ALLEGATIONS

At all times material to this Information, unless otherwise specified:

1.      Defendant BARRY ANDERSON was a resident of Findlay, Ohio, in the Northern District of Ohio, Western Division.

2.      Victim 1 was a multi-national company located in Cleveland, Ohio, in the Northern District of Ohio, Eastern Division.  Victim 1 manufactured industrial explosives and accessories and provided technical and blasting services.  LLC 1 was a Delaware limited liability company located in Findlay, Ohio, in the Northern District of Ohio, Western Division.  LLC 1 was a subsidiary of Victim 1.  Employee 1 was the property and licensing manager for Victim 1.

3.      From in or around 1976 through on or about August 23, 2000, Victim 1 employed Defendant in various positions, including as a member of the sales staff, Regional Manager, and President of LLC 1.  On or about August 23, 2000, Victim 1 terminated Defendant after Victim 1 discovered that Defendant had stolen approximately $400,000 from Victim 1's petty cash fund.

Defendant stole these funds by creating fraudulent invoices that he submitted to Victim 1, which Victim 1 then paid.

4. On or about June 1, 2005, after Defendant went to work for Victim 1's competitor and to protect the integrity of Victim 1's information, products, and services, Victim 1 rehired Defendant. Thereafter, from on or about June 1, 2005, through on or about August 26, 2023, Victim 1 employed Defendant as the President of LLC 1. In this role, Defendant was responsible for, among other things, authorizing payment to third-party vendors of Victim 1 and identifying real property for Victim 1 to acquire in the course of its regular business activities.

5. Gregory Shuey (charged separately) was a resident of Harrod, Ohio, in the Northern District of Ohio, Western Division. Shuey was the sole owner and operator of Shuey Backhoe and Dump Trucking, Inc. ("Shuey Backhoe"), an Ohio corporation located at Shuey's residence in Harrod, Ohio. Shuey Backhoe provided specialized freight trucking and heavy machinery for use at commercial sites. From time to time, Shuey Backhoe provided these and other services for Victim 1. Victim 1 paid Shuey Backhoe for its services by issuing checks that were mailed through the U.S. Postal Service.

6. Persons 1 through 3 were Defendant's daughters.

7. Person 4 was Defendant's attorney.

8. The Farmback LLC ("Farmback") was a limited liability company organized under the laws of the State of Ohio on or about November 25, 2013. Person 2 was an authorized representative of Farmback. Person 3 was a statutory agent for Farmback.

9. Marble Lake Properties, LLC ("Marble Lake") was a limited liability company organized under the laws of the State of Ohio on or about April 1, 2016. Defendant was an authorized representative of Marble Lake. Person 4 was a statutory agent for Marble Lake.

10. IPB, LLC ("IPB") was a limited liability company organized under the laws of the State of Iowa on or about November 14, 2018. Defendant was an authorized representative of IPB. Person 4 was a statutory agent for IPB.

11. WPB, LLC ("WPB") was a limited liability company organized under the laws of the State of Wisconsin on or about March 20, 2019. Defendant and Person 4 were authorized representatives of WPB.

COUNT 1
(Conspiracy to Commit Mail Fraud, 18 U.S.C. § 1349)

The United States Attorney charges:

12. The factual allegations contained in Paragraphs 1 through 5 are re-alleged and incorporated as though fully set forth herein.

13. From in or around October 2016, through in or around September 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant BARRY ANDERSON and Gregory Shuey, and others known and unknown to the United States Attorney, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit a federal fraud offense, that is, to devise and intend to devise a scheme and artifice to defraud Victim 1, and to obtain money and property from Victim 1 by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud: to place, and cause to be placed, in any depository for mail matter, any matter and thing to be sent and delivered by the U.S. Postal Service, and to take and receive from the U.S. Postal Service, any such matter and thing delivered by the U.S. Postal Service, in violation of Title 18, United States Code, Section 1341 (Mail Fraud).

3

<u>Objects of the Conspiracy</u>

14.     The objects of the conspiracy were to: (1) use false and fraudulent pretenses to induce Victim 1 to pay Shuey Backhoe as a third-party vendor; (2) prevent detection of the conspiracy; and (3) enrich Defendant, Shuey, and others.

<u>Manner and Means of the Conspiracy</u>

15.     It was part of the conspiracy that:

a.     Defendant and Shuey falsely represented on Shuey Backhoe invoices submitted to Victim 1 that Shuey Backhoe had performed professional services on Victim 1's behalf.

b.     Defendant and Shuey falsified Shuey Backhoe invoices in four primary ways:

i.     Under the first method, Shuey, at Defendant's instruction, inflated the amount of money listed on Shuey Backhoe invoices beyond that which represented the true value of the work that Shuey Backhoe performed for Victim 1.

ii.     Under the second method, Shuey, at Defendant's instruction, created fake Shuey Backhoe invoices that purported to reflect services that Shuey Backhoe performed for Victim 1 when in fact no such work had been performed.

iii.     Under the third method, Defendant created fake Shuey Backhoe invoices that purported to reflect services that Shuey Backhoe performed for Victim 1 when in fact no such work had been performed.

iv.     Under the fourth method, Shuey, at Defendant's instruction, created fake Shuey Backhoe invoices that purported to reflect services that Shuey Backhoe performed for Victim 1 when in fact no such work had been performed.  These invoices were also designed to cover the cost of Defendant's and Shuey's personal expenses.

4

c.  Defendant and Shuey submitted and caused the submission of the false and fraudulent invoices to Victim 1 seeking payment to Shuey Backhoe.

d.  Based on the false and fraudulent invoices, Defendant and Shuey caused Victim 1 to mail checks to Shuey Backhoe in at least the approximate amount of $2,432,844.92 as purported payment for services performed for Victim 1.

e.  Shuey deposited the fraudulently obtained payments that Victim 1 issued to Shuey Backhoe into one or more bank accounts that Shuey controlled. Shuey kept approximately 50 percent of the fraudulently obtained payments and wrote a check to Defendant for the remaining approximately 50 percent, which Defendant deposited into one or more bank accounts that Defendant controlled.

f.  Defendant and Shuey used the fraudulently obtained payments from Victim 1 to enrich themselves and others.

<u>Acts in Furtherance of the Conspiracy</u>

16.  In furtherance of the conspiracy and to achieve its objectives, one or more members of the conspiracy committed the following acts in furtherance, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

a.  On or about the dates listed below, Defendant and Shuey submitted and caused the submission of invoices seeking payment from Victim 1 for work that Shuey Backhoe purportedly performed for Victim 1, each submission constituting a separate act in furtherance:

| No. | Approximate Date | Invoice No. | Approximate Amount |
|---|---|---|---|
| 1 | October 24, 2016 | 2223 | $6,138.90 |
| 2 | August 7, 2017 | 3128 | $8,346.19 |
| 3 | December 18, 2017 | 121817 | $15,478.75 |
| 4 | May 10, 2018 | 2557 | $7,249.72 |
| 5 | November 8, 2018 | 2716 | $8,860.25 |
| 6 | January 28, 2019 | 2802 | $9,880.50 |

5

| No. | Approximate Date | Invoice No. | Approximate Amount |
|---|---|---|---|
| 7 | February 5, 2019 | 2809 | $7,920.00 |
| 8 | June 17, 2019 | 2840 | $9,072.95 |
| 9 | July 5, 2019 | 3133 | $8,006.25 |
| 10 | July 8, 2019 | 3141 | $9,287.25 |
| 11 | October 18, 2019 | 3143 | $5,764.50 |
| 12 | October 23, 2019 | 3150 | $7,846.13 |
| 13 | February 14, 2020 | 3264 | $7,579.25 |
| 14 | March 9, 2020 | 3291 | $4,697.00 |
| 15 | March 11, 2020 | 3292 | $8,604.05 |
| 16 | March 18, 2020 | 3306 | $4,356.25 |
| 17 | March 18, 2020 | 3304 | $4,216.63 |
| 18 | April 22, 2020 | 3426 | $6,433.24 |
| 19 | April 23, 2020 | 3428 | $9,477.27 |
| 20 | April 24, 2020 | 3431 | $2,348.50 |
| 21 | October 30, 2020 | 4429 | $6,489.33 |
| 22 | February 1, 2021 | 4658 | $9,490.08 |
| 23 | February 16, 2021 | 4681 | $9,180.50 |
| 24 | March 28, 2021 | 4724 | $6,026.04 |
| 25 | September 20, 2021 | 2765 | $6,751.94 |
| 26 | December 1, 2021 | 5163 | $8,646.75 |
| 27 | March 22, 2022 | 5316 | $8,313.84 |
| 28 | April 11, 2022 | 2732 | $7,080.00 |
| 29 | April 11, 2022 | 20222737 | $6,250.00 |
| 30 | April 29, 2022 | 5355-2022 | $7,036.27 |
| 31 | September 12, 2022 | 5527-2022 | $8,792.78 |
| 32 | November 15, 2022 | 5586-2022 | $8,924.28 |
| 33 | December 20, 2022 | 5617-2022 | $7,899.50 |
| 34 | January 26, 2023 | 5643-2023 | $8,289.14 |
| 35 | February 17, 2023 | 5671-2023 | $8,997.04 |
| 36 | March 16, 2023 | 5695-2023 | $9,751.61 |
| 37 | March 27, 2023 | 5703-2023 | $4,487.45 |
| 38 | March 28, 2023 | 5706-2023 | $3,936.14 |
| 39 | April 20, 2023 | 5726-2023 | $7,018.81 |
| 40 | April 20, 2023 | 5723-2023 | $4,456.81 |
| 41 | April 30, 2023 | 5751-2023 | $8,958.07 |
| 42 | May 11, 2023 | 5781-2023 | $7,899.50 |
| 43 | May 23, 2023 | 5793-2023 | $7,402.33 |
| 44 | June 9, 2023 | 5809-2023 | $8,406.56 |
| 45 | June 13, 2023 | 5812-2023 | $7,684.67 |

b. On or about the dates listed below, Defendant and Shuey caused Victim 1 to mail checks to Shuey Backhoe that Shuey deposited into one or more bank accounts that Shuey controlled, each payment constituting a separate act in furtherance:

| No. | Approximate Date | Check No. | Approximate Amount |
|---|---|---|---|
| 1 | February 2, 2017 | 792258 | $6,138.90 |
| 2 | August 15, 2017 | 808641 | $8,346.19 |
| 3 | December 28, 2017 | 819840 | $15,478.75 |
| 4 | May 15, 2018 | 831385 | $7,249.72 |
| 5 | November 13, 2018 | 846663 | $8,860.25 |
| 6 | February 26, 2019 | 855145 | $17,800.50 |
| 7 | June 25, 2019 | 864717 | $9,072.95 |
| 8 | July 23, 2019 | 866772 | $17,293.50 |
| 9 | October 31, 2019 | 874379 | $13,610.63 |
| 10 | March 26, 2020 | 884577 | $25,076.43 |
| 11 | April 30, 2020 | 886821 | $18,259.01 |
| 12 | November 5, 2020 | 897943 | $6,489.33 |
| 13 | February 4, 2021 | 902902 | $9,490.08 |
| 14 | February 25, 2021 | 903999 | $9,180.50 |
| 15 | April 8, 2021 | 906529 | $6,026.04 |
| 16 | September 30, 2021 | 916320 | $6,751.94 |
| 17 | December 9, 2021 | 920300 | $8,646.75 |
| 18 | March 31, 2022 | 926438 | $8,313.84 |
| 19 | April 14, 2022 | 927130 | $7,080.00 |
| 20 | April 21, 2022 | 927440 | $22,164.57 |
| 21 | May 12, 2022 | 928394 | $7,036.27 |
| 22 | September 22, 2022 | 933716 | $8,792.78 |
| 23 | November 22, 2022 | 936068 | $8,924.28 |
| 24 | December 29, 2022 | 937323 | $7,899.50 |
| 25 | February 2, 2023 | 938620 | $8,289.14 |
| 26 | February 24, 2023 | 939516 | $8,997.04 |
| 27 | April 6, 2023 | 941019 | $18,175.20 |
| 28 | April 27, 2023 | 941800 | $11,475.62 |
| 29 | May 11, 2023 | 942278 | $8,958.07 |
| 30 | May 25, 2023 | 942757 | $7,899.50 |
| 31 | June 1, 2023 | 942957 | $7,402.33 |
| 32 | June 22, 2023 | 943655 | $16,091.23 |

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (Mail Fraud, 18 U.S.C. §§ 1341 and 2)

The United States Attorney further charges:

17.     The factual allegations contained in Paragraphs 1 through 4 and 6 through 11 are re-alleged and incorporated as though fully set forth herein.

18.     From in or around November 2013, through in or around September 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant BARRY ANDERSON devised and intended to devise a scheme and artifice to defraud Victim 1, and to obtain money and property from Victim 1 by means of false and fraudulent pretenses, representations and promises.

### Purposes of the Scheme

19.     The purposes of the scheme included, but were not limited to, the following: for Defendant to unjustly enrich himself and his designees by (1) using false and fraudulent pretenses to induce Victim 1 to enter into lease agreements, and to make payments thereunder, for real property that Defendant and his confederates, Persons 1 through 4, in fact owned and controlled; and (2) concealing the scheme.

### Manner and Means of the Scheme

20.     It was part of the scheme that:

a.     Defendant and his confederates created and caused the creation of limited liability companies ("LLCs") that Defendant and his confederates owned and controlled and from which they financially benefitted.

b.     Defendant and his confederates caused the LLCs to purchase real property, which Defendant and his confederates then leased to Victim 1 pursuant to lease agreements.

8

c.     Defendant and his confederates caused Victim 1 to enter into the lease agreements under false and fraudulent pretenses, concealing the fact that Defendant and his confederates owned, controlled, and financially benefitted from the LLCs, and giving the false appearance that Defendant was causing Victim 1 to enter into leases with third parties for Victim 1's commercial benefit and not for his and his confederates' benefit.

d.     Defendant and his confederates submitted and caused the submission of invoices from the LLCs to Victim 1 seeking rental payments under the lease agreements.

e.     Based on Defendant's and his confederates' material misrepresentations and omissions, Defendant and his confederates caused Victim 1 to issue checks, including through the U.S. Postal Service, to the LLCs in at least the approximate amount of $954,330 as rental payments for the real property.

f.     Defendant, Person 2, and Person 3 deposited the checks into one or more bank accounts that Defendant and his confederates controlled.

g.     Defendant and his confederates used the fraudulently obtained payments from Victim 1 to enrich themselves and others.

Acts in Furtherance of the Scheme

21.     In furtherance of the scheme, and to accomplish its purposes and conceal the existence thereof, Defendant committed and caused to be committed, in the Northern District of Ohio, Eastern Division, and elsewhere, the following acts, among others:

a.     On or about January 1, 2015, Defendant and Person 3 caused Victim 1 to enter into a Lease Agreement with Farmback for a 40-acre real property parcel in Posen, Michigan (the "Posen Property"), which Agreement Person 3 signed on behalf of Farmback.

b.     On or about May 11, 2016, Defendant and Person 4 caused Victim 1 to enter into a Lease Agreement with Marble Lake for a 20-acre real property parcel in Mackinac

9

County, Michigan (the "Mackinac 1 Property"), which Agreement Person 4 signed on behalf of Marble Lake.

c.      On or about August 31, 2017, Defendant and Person 4 caused Victim 1 to enter into a Lease Agreement with Marble Lake for an 8.1-acre real property parcel in Mackinac County, Michigan (the "Mackinac 2 Property"), which Agreement Person 4 signed on behalf of Marble Lake.

d.      On or about December 1, 2018, Defendant and Person 4 caused Victim 1 to enter into a Lease Agreement with IPB for a 7.67-acre real property parcel in Hardin County, Iowa, which Agreement Person 4 signed on behalf of IPB and Defendant signed on behalf of Victim 1.

e.      On or about May 1, 2019, Defendant and Person 4 caused Victim 1 to enter into a Lease Agreement with WPB for a 70-acre real property parcel in Berlin, Wisconsin (the "Berlin Property"), which Agreement Person 4 signed on behalf of WPB and Defendant signed on behalf of Victim 1.

f.      On or about December 1, 2020, Defendant caused Person 3 to send a letter to Victim 1, which was addressed to Defendant, thanking Victim 1 "for your valued tenancy" and increasing the annual rent for the Posen Property from $22,200 per year to $23,310 per year.

g.      On or about March 17, 2021, Defendant sent an email to Employee 1 representing: (1) that Defendant "was asked by the land owner" of WPB to provide a copy of the hazard insurance for the Berlin Property; and (2) that Defendant "received verbal notice that Marble Lake Properties wants to exercise [its] right to increase the rent from 27,500.00 to 30,000.00" annually on the Mackinac 1 Property.

h.      On or about December 29, 2022, Defendant sent an email to Employee 1 requesting that Employee 1 mail Victim 1's rental payment for Marble Lake directly to Defendant because Defendant was "meeting with the owner [of Marble Lake]" and "will deliver [the check] by hand."

i.      On or about July 25, 2023, at approximately 11:19 a.m., Defendant sent an email to Employee 1 inquiring about the requirements for early termination of Victim 1's lease with Marble Lake for the Mackinac 2 Property.

j.      On or about July 25, 2023, at approximately 11:58 a.m., Defendant sent an email to Employee 1 clarifying that he was inquiring about early lease termination for the Mackinac 2 Property, not "another property in Wisconsin [where] the landowner is wpb llc."

k.      On or about July 25, 2023, at approximately 2:10 p.m., Defendant sent an email to Employee 1 representing that he had "talked to [Marble Lake]" and that "they [Marble Lake] would agree to being paid up front for the 3 years ahead of us [Victim 1]" if Victim 1 terminated the Mackinac 2 Property lease early.

l.      On or about July 25, 2023, at approximately 2:36 p.m., Defendant sent an email to Employee 1: (1) explaining the necessity for Victim 1's lease with Marble Lake for the Mackinac 1 Property; (2) discussing the lease of an additional five acres from Marble Lake; and (3) recommending that "if we [Victim 1] can go ahead and get out from under that one [the lease for the Mackinac 2 Property] for what they [Marble Lake] offered we should do it."

m.      On or about July 28, 2023, at approximately 5:03 a.m., Defendant sent an email to Employee 1 discussing a draft addendum to Victim 1's lease with Marble Lake for the Mackinac 2 Property and indicating that Defendant "will present it to them [Marble Lake] and see what they [Marble Lake] say."

11

n.      On or about July 28, 2023, at approximately 11:05 a.m., Defendant sent an email to Employee 1 discussing a termination date for Victim 1's lease with Marble Lake for the Mackinac 2 Property and discussing the lease of an additional five acres from Marble Lake.

o.      On or about July 28, 2023, at approximately 11:33 a.m., Defendant sent an email to Employee 1 that continued to discuss the lease of an additional five acres from Marble Lake and explained that "they [Marbles Lake] thought we [Victim 1] might want some additional space."

p.      On or about July 28, 2023, at 12:22 p.m., Defendant sent an email to Employee 1 requesting a copy of the revised addendum to Victim 1's lease with Marble Lake for the Mackinac 2 Property so that Defendant "can forward to owner for signature."

q.      On or about the dates listed below, Defendant submitted and caused the submission of invoices seeking rental payments from Victim 1 as set forth below, each submission constituting a separate act in furtherance:

| No. | Approximate Date | Invoice No. | Lessor | Approximate Amount |
|-----|------------------|-------------|--------|--------------------|
| 1 | January 10, 2014 | 1383226 | Farmback | $22,200 |
| 2 | January 1, 2015 | 1466251 | Farmback | $22,200 |
| 3 | January 5, 2016 | 1544785 | Farmback | $22,200 |
| 4 | April 29, 2016 | 1578283 | Marble Lake | $27,500 |
| 5 | January 10, 2017 | 1627311 | Farmback | $22,200 |
| 6 | April 17, 2017 | 1649125 | Marble Lake | $27,500 |
| 7 | August 31, 2017 | 1680504 | Marble Lake | $56,000 |
| 8 | January 17, 2018 | 1710581 | Farmback | $22,200 |
| 9 | April 10, 2018 | 1728587 | Marble Lake | $27,500 |
| 10 | November 15, 2018 | 1778530 | IPB | $31,500 |
| 11 | January 4, 2019 | 1787480 | Marble Lake | $24,000 |
| 12 | January 21, 2019 | 1790324 | Farmback | $22,200 |
| 13 | March 27, 2019 | 1804150 | WPB | $34,800 |
| 14 | April 11, 2019 | 1807206 | Marble Lake | $27,500 |
| 15 | December 18, 2019 | 1859116 | Marble Lake | $24,000 |
| 16 | December 18, 2019 | 1859119 | Farmback | $22,200 |
| 17 | January 1, 2020 | 1859117 | IPB | $28,800 |
| 18 | April 6, 2020 | 1874811 | Marble Lake | $27,500 |

12

| No. | Approximate Date | Invoice No. | Lessor | Approximate Amount |
|---|---|---|---|---|
| 19 | April 6, 2020 | 1874815 | WPB | $34,800 |
| 20 | December 21, 2020 | 1920673 | Marble Lake | $24,000 |
| 21 | January 4, 2021 | 1920909 | Farmback | $23,310 |
| 22 | January 22, 2021 | 1923410 | IPB | $28,800 |
| 23 | April 9, 2021 | 1936819 | Marble Lake | $30,000 |
| 24 | April 9, 2021 | 1936849 | WPB | $34,800 |
| 25 | January 4, 2022 | 1986138 | IPB | $28,800 |
| 26 | January 4, 2022 | 1986136 | Marble Lake | $24,000 |
| 27 | January 5, 2022 | 1985672 | Farmback | $23,310 |
| 28 | April 13, 2022 | 2002988 | Marble Lake | $30,000 |
| 29 | April 13, 2022 | 2002989 | WPB | $34,800 |
| 30 | December 9, 2022 | 2051543 | IPB | $28,800 |
| 31 | December 9, 2022 | 2050478 | Marble Lake | $28,800 |
| 32 | January 11, 2023 | 2051869 | Farmback | $23,310 |
| 33 | March 24, 2023 | 2064866 | WPB | $34,800 |
| 34 | April 19, 2023 | 2068911 | Marble Lake | $30,000 |

r.　　On or about the dates listed below, Defendant caused Victim 1 to issue rental payments that Defendant and his confederates deposited and caused to be deposited into one or more bank accounts that they controlled, each payment constituting a separate act in furtherance:

| No. | Approximate Date | Check No./ EFT Ref. No. | Lessor | Approximate Amount |
|---|---|---|---|---|
| 1 | January 21, 2016 | Check 760246 | Farmback | $22,200 |
| 2 | May 2, 2016 | Check 7912 | Marble Lake | $27,500 |
| 3 | January 10, 2017 | Check 790007 | Farmback | $22,200 |
| 4 | April 18, 2017 | Check 798659 | Marble Lake | $27,500 |
| 5 | August 31, 2017 | Check 810082 | Marble Lake | $56,000 |
| 6 | January 17, 2018 | Check 7961 | Farmback | $22,200 |
| 7 | April 10, 2018 | Check 828486 | Marble Lake | $27,500 |
| 8 | November 20, 2018 | Check 847537 | IPB | $31,500 |
| 9 | January 8, 2019 | Check 851196 | Marble Lake | $24,000 |
| 10 | January 22, 2019 | Check 852392 | Farmback | $22,200 |
| 11 | March 28, 2019 | Check 857869 | WPB | $34,800 |
| 12 | April 16, 2019 | Check 859089 | Marble Lake | $27,500 |
| 13 | January 9, 2020 | Check 879177 | Marble Lake | $24,000 |
| 14 | January 9, 2020 | Check 879162 | Farmback | $22,200 |
| 15 | January 9, 2020 | EFT 1271 | IPB | $28,800 |
| 16 | April 9, 2020 | Check 885691 | Marble Lake | $27,500 |

13

| No. | Approximate Date | Check No./ EFT Ref. No. | Lessor | Approximate Amount |
|-----|-----|-----|-----|-----|
| 17 | April 9, 2020 | Check 885709 | WPB | $34,800 |
| 18 | January 8, 2021 | Check 901428 | Marble Lake | $24,000 |
| 19 | January 8, 2021 | Check 901414 | Farmback | $23,310 |
| 20 | January 22, 2021 | EFT 1336 | IPB | $28,800 |
| 21 | April 15, 2021 | Check 906732 | Marble Lake | $30,000 |
| 22 | April 15, 2021 | Check 906744 | WPB | $34,800 |
| 23 | January 13, 2022 | EFT 1407 | IPB | $28,800 |
| 24 | January 13, 2022 | Check 922321 | Marble Lake | $24,000 |
| 25 | January 13, 2022 | Check 922317 | Farmback | $23,310 |
| 26 | April 14, 2022 | Check 926956 | Marble Lake | $30,000 |
| 27 | April 14, 2022 | Check 926976 | WPB | $34,800 |
| 28 | January 5, 2023 | Check 937555 | IPB | $28,800 |
| 29 | January 12, 2023 | EFT 1486 | Marble Lake | $28,800 |
| 30 | January 12, 2023 | Check 937669 | Farmback | $23,310 |
| 31 | March 30, 2023 | Check 940642 | WPB | $34,800 |
| 32 | April 20, 2023 | Check 941411 | Marble Lake | $30,000 |

Execution of the Scheme

22. On or about April 20, 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant BARRY ANDERSON, for the purpose of executing the foregoing scheme and artifice to defraud, and attempting to do so, knowingly caused to be delivered by the United States Postal Service, in accordance with the directions thereon, a $30,000 check to Marble Lake, sent from Victim 1.

All in violation of Title 18, United States Code, Sections 1341 and 2.

DAVID M. TOEPFER
United States Attorney

By:  _____
Elliot Morrison
Chief, White Collar Crimes Unit

14